argument for this sitting, 24-303-23. And I know you all know the light system, so whenever you're ready, Ms. Kuhn. Good afternoon, Your Honors, and may it please the Court. My name is Samantha Kuhn, and I represent Mr. King in this appeal. There's two contested sentencing issues that we've raised on appeal. One is a challenge to the guidelines calculation by the Court, and the other deals with the Court's attempt to grant jail credit or time for credit served in his sentence. I plan to first address the guidelines issue with the Court's permission, and then briefly address the jail credit issue at the end. Before getting into the merits of the question about robbery and whether Louisiana armed robbery is clearly not a crime of violence under the guidelines, I want to briefly address the government's invited error argument. The case law is clear that for invited error to be found by the Court, there has to be an error that is actually attributed to the actions of defense, and this Court narrowly construes the statements of counsel. So this is the whole idea is because counsel is advocating for a lower base offense level, that once the district court did that or the government withdrew its objection, that therefore it invited any further error? Is that right? My understanding of the government's argument is that because the sentencing advocacy did reference the guidelines range that had been calculated by probation, which we've now argued is error, that that somehow invited error by the district court. I don't think the case law supports that conclusion. The only case that's even close to it that the government cites, I believe, was Varela-Avila. In that case, though, defense counsel was the one that actually proposed and calculated and suggested the guidelines range to the district court. It was not calculated by probation in the first instance. In here, what counsel was doing was advocating for a lower sentence. Correct. In other words, it was not to have applied the other enhancement that got them to 22 or whatever. Right. It was responsive to the government's request for an additional enhancement to apply and basically argued that the court shouldn't apply that or should vary downward if it did accept the government's argument. But you're accepting plain error. So it's got to be so clear and obvious that the district court, the government, probation, and the defense attorney all missed it. Correct. And yet they shouldn't have. It's that obvious. Correct. Clear and obvious error. And just one final point on the invited error. I did want to point out the Taylor case that the government cites, even if this court were to entertain the idea of invited error, in Taylor, this court actually said that a manifest injustice would exist if a clear error would have changed the district court's sentence and they remanded for that purpose. So ultimately, I think it's academic, the question about invited versus plain error in this type of situation. But yes, we agree it is plain error. It has to be clear, obvious error. And the government concedes that if this court does in fact find clear, obvious error, the third and fourth prongs of plain error review are satisfied. It looks like our panels since Garner have been hesitant on plain error review. That seems to be the primary thrust, whether it's Forbido or Porteri. Is that correct? Porteri, yes. Porteri. So Forbido, in that case, the court was very specific that the law there on plain error review was that the appellant didn't even cite a Louisiana case saying that the predicate offense was a general intent crime. And so that's obviously not the situation here. We provided several cases. The government concedes that Louisiana armed robbery is in fact a general intent offense. Well, but the question really, I mean, I don't know if that's the standard. It's just, it's still got to be a plain or obvious error. And I don't know the failure to cite cases in Forbido versus citing cases here. I mean, I don't, I don't know that that tells us, it may get us part of the way down the field, but I don't know that that's dispositive in terms of a material distinction between the cases. I will say in Forbido that my reading of Forbido is that that was the, the I guess basis for the courts rejecting the plain error argument because they specifically said appellant fails to cite a case. Well, I was just going to ask another thing about Forbido is what was, what was at issue there is, I guess, domestic violence, aggravated assault. Garner addresses aggravated assault. I mean, that's got to be at least adjacent to each other. This is, this would be a further extension of Garner than what Forbido said we're not doing that. Right. And I would say that in Portery, for example, that that panel did recognize that the application of Garner, Garner two crimes that are recognized as general intent offenses in Louisiana, that that does show that they can be committed by reckless or negligence. I know that in Portery, the court went a step further and still expected a case that showed a factual basis or a factual scenario where reckless intent wasn't, was affirmed. I don't believe that that is a correct application of Garner. I think Garner and Borden show clearly that as long as it's established that the predicate offense is a general intent crime, that it's clear. There's no limiting principle. So first degree rape. So to the government's point, if the case that they cite reviewing that the definition, that case defines first degree rape, I think it's in race state. It's a redacted name, but it says first degree rape is defined as intercourse with a person under the age of 13. And it specifically says knowledge of the age is not a requirement. And so in that instance, there is no force requirement in that actual definition that the government cites. Which of the three elements for 1464 has, it's not the taking that can be done recklessly, it's the force that can be done recklessly, or is it the while armed? The force or intimidation. Okay. But there isn't, unlike Ibarra, for example, Louisiana is a little fuzzy, right? The Sienta is not, unlike the Texas case in robbery, where we have Texas statutes that put the Sienta standard in, and we can look for recklessness or negligence. If it's there, you lose. Here, it is at a level further, correct? Because nothing in 1464 has either of those disqualifiers in it. So we have to jump to the general intent, but it doesn't, we don't have reckless or negligence stated there either. It's something we're inferring from the case law, Smith primarily. I agree to the point of the inference part. The garner is where it fills that hole. So as you said, Texas law has recklessness embedded in the actual description and definition of the offense. But if Garner fills the hole, then how does Forbido come out the way it did? And Judge Dennis was on both panels. Forbido did not have a case, so Garner makes clear that general intent crimes in Louisiana encompass the recklessness standard. Forbido did not provide a case saying the offense he was citing, and I understand Judge Wilson's point that it's similar, but did not cite a case saying that that specific crime was actually a general intent crime in Louisiana. And for that reason, Forbido said, there's no plain error here. Your best case is the Supreme Court, the Smith case. I'm sorry? The best case describing armed robbery, but it's a complicated case. They never say reckless or negligent. Right. They never use those terms. And the majority, I think, says she did have the specific intent, but arguendo, we're going to go on and talk a little more, and then it gets into accessory principle liability. I didn't really draw out an easy, confident conclusion that it said armed robbery can be done recklessly. So in that case and also in the Robinson case, the analysis always turned on what the perception of the victim was and whether it was reasonable. And so that's where the recklessness comes in. And I will say in Garner, for example, when Garner was discussing the recklessness and how recklessness is embedded in that general intent offense, I think the case that they cited as an example, that involved reckless intent where aggravated assault with a firearm was committed where the defendant battered somebody and then placed a firearm on furniture. And they said, well, that was reckless intent because that would reasonably be construed as a threat. But how do you get to reckless intent for armed robbery? I mean, I can totally see it in aggravated assault. Things get too heated. People go berserk. Whatever happens, and things get out of hand, literally. How does that happen with an armed robbery, though? So I think Smith and Robinson provide the examples. Essentially, the idea being the intent is to take property, but there's no intent to use force or intimidation as the means of getting the property from the person. So in Smith, it's not— But that's simple robbery, isn't it? Well, if a firearm is possessed by the person, then that makes it armed robbery regardless of if anyone sees the gun, whether anyone knows the gun is there. Just the mere possession of it, the Louisiana courts have said possession of it heightens the risk that there will be injury or there will be violence. And so that's what elevates it from simple to armed robbery. And Stapleton makes clear, as well as Smith, that it doesn't matter if the victim has ever even seen a gun. And so in Smith, for example, not the specific defendant named in that, but the co-defendant who actually committed the taking, the facts were undisputed that he basically—they were driving around a parking lot. A woman was unloading groceries into her trunk, and her purse was on top of the groceries. And the gentleman who committed the taking got out of the car, ran, grabbed the purse, and ran back in the car. And there was no physical interaction. There was no words exchanged. There was no—there was barely awareness by the victim that he was even there. She just saw the— But how was that reckless? He intended to do everything you just described, didn't he? Well, the idea behind Borden, though, is that it has to be an intentional use of force. It can't be a reckless use of force or intimidation. And so, for example, you can't—you have to have intended to cause the person to fear injury or cause the person to fear violence in order to commit the taking. That's what Borden stands for. And the way they distinguish it, the Supreme Court explained, you know, you have purposeful and you have knowing on the one hand, and then you have recklessness and negligence on the other hand. So the idea is you didn't intend to use force, but the circumstances were such that the victim perceived it, and you were reckless in creating those circumstances. Correct. And there's a reasonableness element to it. And so that was the whole point, is that in Smith, for example, and in Robinson, the defense was—or the argument on appeal was I didn't use any force, I didn't use any intimidation, I wasn't trying to scare I get the textual argument. Do you have any cases, or is this purely a text argument? So any cases— Cases of Louisiana actually using the statute this way. I would say Smith, Robinson, and Johnson are probably the strongest examples of this kind of taking that basically amounts to a snatching or a grabbing. In Johnson, it was a bank case where somebody was getting change at a bank teller, and the defendant walked up, grabbed the money out of the person's hand, and just sprinted out of the bank. You regard those as reckless cases rather than intentional cases. Right. Showing reckless intent with respect to the use of force or intimidation, where the defense argued that it was insufficient evidence for robbery because they didn't use the force or intimidation, and they just grabbed money or grabbed a purse, and it should have been purse snatching or theft, and the courts rejected that argument that it was theft and said that the victim was reasonably intimidated by the situation or by the words or by the look or by something about the scenario, and that was the reason it was affirmed as a robbery. Would Smith also—if we think Portieri is persuasive, that there has to be a prosecution shown to have rested on recklessness, where would you turn to then? Same cases, Smith, Robinson, and Johnson. I'm still worried about the limiting principle, then, because in Louisiana, you read the Cialino article, right? Read the—oh, yes. The Cialino article suggesting that in Louisiana, general intent applies across the board to a huge number of offenses, because this answer isn't statute specific. Okay, so your rule would be, even on plain error, the universe of Louisiana general intent crimes now can't qualify as violent? I think that under Garner, that's the binding precedent for this Court. I disagree with Portieri extending it to requiring an actual case. But Portieri could be easily dealt with if it were raised without, you know, forfeiting it, because then— I see. You see what I mean? Yes, so— You have the opportunity to say, actually, they are indicting these recklessness cases. I'm sorry, I don't— You'd be able to show prosecutions in Louisiana where the state of mind was only one of recklessness. In the district court, is that what you're saying? Yes. You just—that—you'd be able to assemble it. It's not going to be litigated in the first instance there. I guess I'm not—sorry, I'm not following it there. I'm just thinking, but for a plain error standard review where it's being done to us, therefore we've got to look at Smith and guess whether the Supreme Court would have described what it's seeing as reckless and negligent. The parties would be able to bring to the district court's attention whether the—in fact, Louisiana is ever realistically prosecuting these under that theory. I see what you're saying. And I think for that, I would turn also back to Garner, because as I discussed before, when the court in Garner was looking at state cases, I think it's State v. Boner is what they looked at, and that's the one with the firearm on. I think that the facts as described in Smith, Robinson, and Johnson show an even lesser degree of potential intent. If that was found to be reckless intent of putting a gun on a table in front of someone that you just hit, I think that the type of intimidation that is found here— And I'm going to give you a little extra time, so don't worry, because there are several other issues in this case. But has any other circuit applied Borden in a plain error context to overturn armed robbery, general intent armed robbery, as a COV? Not that I'm aware of, no. But you're probably not aware of any of the others where they say it still counts, or do those cases— Louisiana armed robbery? No, any circuit. Oh. Any circuit, general intent armed robbery. We just don't know. No, I have not seen that. And Louisiana, as Garner made clear, is just so unique in their intent standards that I think that that's—we're not going to see that in any of these cases. What's the simple answer that this doesn't count? Armed robbery has to be an enumerated offense if robbery is. The simple answer for—oh, for following into that? I think the simple answer is that the Sentencing Commission, when it made that definition that's in the guidelines that applied to Mr. King's case, it clearly and explicitly said it was intended to mirror Hobbs Act robbery. And so we have Taylor that says Hobbs Act robbery, it's knowing offense. All the circuits that we've found that have specifically articulated the mens rea have said knowing and willfully— It collapses back in the same— It collapses into itself. And the Sentencing Commission, in fact, said that the reason they were creating that definition was because of confusion about whether Hobbs Act actually satisfied the force clause, which they said it always did. And so, yes, that, for the same reasons, it doesn't fit the force clause. It can't fit Hobbs Act. I could add two minutes to each side. Thank you. Just on the other issues. The parties are agreeing there's a Diggles error. We have to vacate and remand. Correct. But in terms of if we're going to vacate and remand, is it your position that we should also ask Judge Lammel to clarify what he meant to run concurrent? Or do you think we can resolve that legally here? No, I think the sentence has to be vacated because he did say concurrent sentences. The problem is he tried to order credit for time served, which— The error you're saying is in the judgment and conviction that he ran it concurrent to state offenses? Or is the error the oral argument statement because of its vagary? It's the oral pronouncement of saying credit for time served and expressing his clear intent for previous jails. But he said credit for time served, and then in the J&C, he clarifies what he means. If that clarification's correct, he couldn't do that, right? You agree he couldn't make it run concurrent. I don't know that he viewed it as a clarification or not, because those were two separate issues. Concurrent is forward-looking, whereas jail credit is back-looking. I don't know that he thought of it as a clarification. But I think either way— So what's your case, and what's the relief? Because I agree there's ambiguity. Clearly, there was a lot of discussion about what was happening in the state offenses. And then he says, I want it to run concurrent. What are his exact words? So he says, it's the judgment of the court that you be placed in the custody of the BOP for a period of confinement of 71 months with credit for time that you've already served awaiting this sentence. With credit for time you've already served. Awaiting this sentence. But we don't know whether he meant state time, although that is eventually what he writes in the J&C, right? In the J&C, he says concurrent. So what that—the effect of that was that he still had state time, Mr. King did. It did run concurrent to the future state time that he would serve. But as the supplemental document we provided from the BOP shows, he got zero days of credit preceding the federal sentencing. But would there be some other avenue by which he could raise that through the BOP? No, because the BOP's rules are clear. And in Wray BOP, I think—Judge Higginson, I think you were on that case—it clearly explains that the BOP's rules, the statute, and the way they implement it precludes you as a judge from, like, backdating, basically. Yeah, you can't micromanage the sentence after the fact. Right. And so there's no relief except for the only way that could be effectuated would be Judge LaMelle would have to reduce the sentence he imposed by the number of months. Do you have a case where we've allowed that relief? In Jones, the Jones case, I believe it's unpublished, but in Jones it was nearly identical scenario. The judge pronounced credit for time served. And then after the fact, I don't even think it was in the written judgment, and then it was clear it was not going to be credited by the BOP, and so this court vacated and remanded. Was that plain error? I believe it was plain error. I would have to double-check. Because I was going to ask, if there's ambiguity here in what the judge intended, does that flunk the plain error review? I don't think so, because the case law makes very clear what the BOP's—what the statute says and what the BOP's method of implementing it is. Because he would have thought at the time, the oral pronouncement, he's getting it. Right. Based on what the judge said. And so either he thought he could order it, which was incorrect, or perhaps he thought that he was going to get it no matter what, which was also factually incorrect. It's unclear what brand of error, but either way, it's clear and obvious error. And just real quick, the Jones—Jones was reviewed for plain error. That was vacated on plain error review. Okay. Thank you, Counsel. You have rebuttal time. Thank you, Your Honor. Mr. Boydman. May I proceed? Yes. Thank you, Judge Higginson. May it please the Court. Louisiana armed robbery is the taking of something from another or from someone's immediate control by force or intimidation while armed with a dangerous weapon. This is a crime of general intent, but even if under this Court's decision in Garner, it can theoretically be committed recklessly, the elements of the offense realistically require that a perpetrator direct his action at or target another individual, a fact that the Supreme Court in Borden used to tie to purposeful and knowledge intent as opposed to recklessness or negligent conduct. The common sense application of the statutes together with the judgments of the Louisiana Supreme Court and statements of this Court conclude one thing, that armed robbery in Louisiana requires the use, attempted use, or threatened use of violent or physical force or force sufficient to overcome a victim's resistance. In either case, it is a crime of violence under the guidelines. I want to start, Your Honor, with talking about the discussion of Garner, and we disagree with opposing counsel's statement that Garner categorically would exclude the entire body of Louisiana general intent crimes, which, Judge Dickinson, I think is the question you were asking. Garner dealt with one case. It didn't deal with every statute in front of it. It talked about the general intent crime, but that doesn't change the fact of what we normally do in a categorical analysis, and that is analyze each crime individually. And that's what this Court did in Forbido, and that's what it did in Porterio. And the first thing, when you do that, when you do analyze it, you come to the conclusion that armed robbery, as well as simple robbery in Louisiana, requires the proper mens rea as Borden requires, first of all, by statute. General intent in Louisiana 1410 is defined whenever there is specific intent, but also when the circumstances indicate that the offender in the ordinary course of human experience must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. Now, that's very close language to what the Supreme Court in Borden says about a purposeful mens rea, meaning that the defendant is aware that a result is practically certain to follow from his conduct, whatever his affirmative desire. If this had been objected to, I don't see how it would be different than Garner. In other words, it is a general intent crime. I agree it's a general intent crime, but I don't believe that Garner stood for the proposition that every general intent crime... But why, how is this one different? Especially when we have the Supreme Court in Smith describing what it explicitly says didn't require an intent to commit the crime. Well, I think it would, I think it would, two things to that. First, the statute at issue in Garner... And by the way, my question is asking, are you relying on the plain error, it's not clear and obvious, but it is error, or are you actually arguing that this wouldn't count for COV enhancement ever? It would, that it would count for a COV? Yeah. We think armed robbery would, yeah. So you don't need, you're not relying on the standard review? No, Your Honor. Then I don't understand how it's different than Garner. Because Garner is dealing with a statute, at least part of which the court determined could have been done negligently, and that was actually the discharge of the firearm. I believe that the discharge portion could, the firearm could be discharged negligently as separate from maybe the assault. But when you take a look at what general intent requires here, Judge, on the actual statute that is before this court, we are looking at directed conduct, and that is something... What do you do with the fact that he could have a gun in a backpack strapped on while he's committing the robbery? I mean, it's armed robbery, but he doesn't do anything with the gun. Well, in that case, that would be fine, Your Honor, because it's simple robbery, and armed robbery in Louisiana is just simple robbery while you're, while you're... While you're carrying. I know, but that's the point, is he may not even intend to use the gun. He may not even, he may have forgotten he had the gun in his backpack. I mean, that wouldn't be a specific intent to use the gun in an armed robbery, would it? No, and I don't think specific intent is necessary, but I also don't think specific intent is called for. But what is called for is what is the act against the person as the force or intimidation that makes armed robbery and simple robbery in Louisiana a crime of violence. Not just, not the armed, necessarily the armed with a dangerous weapon. That might be icing on the cake, but I don't even think the court will look at it. The issue is really force or intimidation. You're basically saying that simple robbery and armed robbery are conflated for the purpose of this analysis. I believe so. I would like to make an argument that, you know, a dangerous weapon in Louisiana is an item that's calculated, that's likely calculated in the manner used to cause death or great bodily harm, but I don't think that's how the Louisiana courts have looked at it. Because, as you pointed out, Judge Wilson, the gun can just be on you and not used. That makes it an armed robbery, but even if you take the gun away, the force or intimidation against someone, that is still what the force, that's still what makes this a crime of violence. But I thought, maybe I'm wrong about this, correct me, but I thought Louisiana courts had pretty much determined that simple robbery may not be a crime of violence because, I mean, well, I'm complaining federal and state court, but they basically have clearly said simple robbery is a general intent crime. Simple robbery is a general intent crime. So it could be committed recklessly. We disagree with that, Your Honor, and I don't, and the reason we bring up here is what you're going to essentially with Porteri and the realistic probability test, regardless of the standard of review, no case has come up, no case has been presented showing a reckless conduct here, that armed robbery or simple robbery, for that matter, can be done recklessly. And I disagree with counsel saying Robinson and Johnson did. So in Texas, simple robbery fails to qualify, but in Louisiana it does? It's a, well, one, we're certainly dealing with a different state, Your Honor, and, you know, I'm, we're, 50 different jurisdictions have, they're not being tied to each other. Texas is not being compared to Louisiana or anything else. Louisiana has to be compared in two situations, one to the force clause or one to the enumerated clause into the mens rea in Borden. And that just comes out of due respect to the courts of the state courts for federalism purposes and because we are dealing with different jurisdictions. In this... But we have to be principled about how we're drawing these distinctions. Yes. So what's the principle? The principle here is the force or is how Louisiana applies this case. And because even if it theoretically can be committed, and I don't think it can theoretically be committed recklessly, but Garner will look at that because it's a general intent crime, but realistically it cannot. The elements that are required, force... What do you make of the fact that the legislators in Texas thought it could be? The legislature in Texas may have thought it could be, but if the state, if the state courts of Texas have applied it differently, that's what you would have to see because out of due respect for that. But the state courts in Louisiana have not replied, applied it that way. In fact, I have not come across any Louisiana case that uses the term recklessly with robbery. I may have missed it. The only time I've seen it is actually when Garner discusses and it's not talking about it in robbery. It's talking about it just in general. You heard our earlier colloquy that it's not impossible, it may not be common, but it's not impossible to imagine a scenario where there's no intent to use, to be armed, to use force, but the perception is very real by the victim and that's enough to constitute recklessness. There may not be an intent to use the weapon, Your Honor, but that's not where the crime of violence portion of this is. What makes this a crime of violence is the requirement that force or intimidation is used against the person, whether you have the gun or not, force or intimidation against the person. And that's the important thing. Right, but the same point, though, right? It's not, again, it may not be terribly common, it may not be the textbook example of armed robbery, but opposing counsel makes the point that you can imagine a scenario where it's not intended, force or intimidation, not actually subjectively intended by the defendant, but is nevertheless validly, reasonably perceived by the victim and therefore there is a recklessness case. Why is that impossible? I don't, well, I would... I hear you saying that it hasn't been done, it hasn't been charged, it hasn't been found, but why can't it be imagined? A few answers to your hypothet, Judge Ho. First of all, the fact that, I don't think it would have to be, I think you mentioned that, the intention to use force. That to me is much more of a specific intent, I desire to use force, as opposed to what Borden has talked about, knowledge, and what the general intent statute is, I do an act, I do a knowing act, directing something towards you, knowing the criminal consequences to come from that. So I think counsel, I took counsel's examples as getting much more close to specific intent rather than knowledge or general intent under Borden. But I would say, because even in that situation, the defendant is intending something, he's voluntarily doing something, and those actions reasonably advert to the criminal consequences that follow. Or in the line of Borden, it would be aware, that the defendant is aware that the result is practically certain to follow. The other thing I would say about the possibility of the hypothets, and certainly we can come up with a number of hypothets, that could be theoretically possible, the only thing I would say is in this instance, the Louisiana courts have not done that. And so while we up here, or we in the federal system, in the prosecutor and defense office, we can think of that, and the court can certainly think of that, the Louisiana courts have not indicated that they're applying it that way. And that would be... Which makes this a strong case for no plain error. I'm not sure it gets you all the way to no error, and I'm sure you'll agree, we don't need to reach the error question. No, no, you don't, and I think you can go just on what we have here. But I think this... Slow down. Sure. Because you're making a much more aggressive position than I thought I saw in the brief. Probably. You are. Yeah, I can believe that. Has any circuit adopted, any circuit in the country, Borden was 20-21, right? Four years ago. Has any circuit adopted the theory that you're suggesting? Which is general intent, simple robbery, actually still qualifies as a crime of violence. Do you have any circuit that has announced the post-Borden, post-Borden? No, but I also would say, Judge, I'm trying to think of a circuit that has done the opposite either, and that's not good. The only... I still think Garner is the opposite. We've done it. That's why I'm baffled by the position you're taking. No, because I think maybe there's a disagreement on what we think Garner means, and I don't think Garner wiped out categorically all Louisiana general intent crimes. So it wiped out one, but what's the principal distinction between every other one? I think you're seeing that in Forbido and Pateri. But those two have, they're unpublished, and they did not say there's no error here. Each time, I mean, each time they specifically said, this is not clear and obvious because mental state of mind in Louisiana is very fuzzy and difficult, and we don't know whether general intent. But I don't see any of them saying that post-Borden, the general intent crime, that's just not reconcilable with Garner. I don't think we've actually had much of those arguments yet, and I think this is percolating through that to some extent. Garner is the law of the circuit. I mean, we have disagreed with Garner, but I'm sure we understand that. But I think Forbido and Pateri, just to take a little more, I see what you're saying, Judge, but I see that as a way of saying, no, we're going to look at each statute individually. Because if Garner was as clear as you're saying, Judge Higginson, that if it's saying as clear that all general intent crimes are out, then it seems to me that would be clear error under Pateri. That they would be saying, yes, this is a clear and obvious error. And then we wouldn't even need to get to the realistic probability test, because at that point it would be out. If you had come and you were just arguing, we should now follow Pateri as binding law, I think, I think, well, here on rebuttal, the defense would be in a difficult position. Because where's the realistic probability? They would say Smith is that case. And we would disagree with Smith as well as we would disagree with the characterization of Robinson. Well, I believe counsel specifically on Robinson is making the argument that there was no demand made. There was no intended. It was just a snatching. That's not the way the Louisiana court in State v. Johnson looked at Robinson, and it's not the way this court in the James decision looked at Robinson, where they said in that case there was a demand made on the cashier. And they said that was a demand similar to what was allowed to be in the bank robbery case in Brewer. And again, that's important because when we look at a demand, we're looking at the perpetrator projecting his act toward someone else. And that's exactly what Bordens says set the mens rea for purpose of knowledge. I mean, the court of appeals in Smith said she didn't know about the gun. Then up on the Supreme Court, they said, doesn't need to know. Sounds like she was reckless being in the company of her boyfriend who had a gun. And that's sufficient. But again, the crime of violence is the force and intimidation, not the possession of the gun. The same reason Judge Wilson, where you're saying simple robbery and armed robbery are identical in that. The presence of the gun becomes an extra sentencing issue. But what the violence of it is, is the requirement of force or intimidation against them. The defendant doing something to create that atmosphere of intimidation and intimidation. Boyfriend did that, but she's along for the ride. She doesn't even know he has a gun. How is that anything other than she was negligent or reckless to be at that Walmart shopping center parking lot? But more to possible in aiding and abetting in a principle of the issue of robbery itself without the gun. Because again, the gun, the arm of this, the arming, the possession of the weapon is a separate part of what creates the intimidation. It can, in a factual circumstance, certainly. But if the gun is not used, the force or intimidation still has to be proven to a jury beyond a reasonable doubt, regardless of whether the gun is used, seen, visible or not. But doesn't this all suggest that Forbido is right and Garner is wrong? We disagree with Garner. And we do. But we're bound by Garner. I mean, it seems to me you're reaching back to grab simple robbery where maybe it would be clearer if you just said we can't extend clearly, plainly, armed robbery, I mean, aggravated assault to armed robbery. Well, I don't think you're extending Garner to this. I think Garner's looking at it. But certainly, I don't think the 37, the aggravated assault in the domestic violence cases would be extended to this because they are different elements. And these are elements that can, especially the part that causes the violence, the part that causes the use of force or overcomes the violence, the force or intimidation, are elements that just cannot be done recklessly. These fit in much more with, you take a look at the... You agree with the opposing counsel that the enumerated, you haven't put much emphasis on the enumerated crime. Is that because it does collapse into the same analysis? We said that in Garner? I think, I think effectively except that, I would say that the enumerated clause talks more about the force being the overcoming of will, more of the Stokely standard. And I think the force or intimidation requirements show that too. And that's creating the air of intimidation. The Louisiana Supreme Courts have used the dictionary to say intimidation is putting someone in fear to get them to do what you want. Force is using something to get them to do what you want. So I think the enumerated standard, which uses a Stokeling force, it certainly fits that. I'm not sure if that answered your question or not, Judge. I probably didn't ask a very articulate question. I'm sorry, I probably didn't answer it. Certainly continue on this. There are, you've conceded one of the other sentencing issues. I was a little confused, I admit, by Judge LaMelle's effort to make sentences run concurrent with something. The government's argument there is the judgment and conviction does contain error because he couldn't order what he ordered? Start with the judgment and conviction. Sure. Well, basically, as you've said, the oral pronouncement is going to control. Right, but I'm asking you a question about judgment. The order that he put in the judgment and conviction, is that a legal sentence or not? I believe it said concurrent, right? He said concurrent to state criminal offenses. Which I don't think that's illegal. Now, in the oral pronouncement, he says he's going to defer to the state. Okay, but then BOP is not making it run concurrent with anything. Well, BOP is not crediting him for the time he served in state custody prior to the imposition of the federal sentence. As the court knows, a federal sentence begins running the day it's imposed. It's not retroactive, but BOP will give someone credit for the time they've served that's not credited toward any other sentence. That's 18 U.S.C. 3585. So I think what's happened here is because the defendant's two years, I might be off on time, but the two years before he was sentenced by Judge LaMelle, that was credited to him by the state. That's why BOP is not crediting him. That's my understanding of it. That's right by operation of law. So the question of here is... Pre-sentencing, the two years you just referenced, he was in federal custody? He was in, to use, for lack of a better term, he was in state custody and he was transferred to marshal custody. So the federal... Not the full two years. No, no. Well, he was transferred to marshal custody, but he was borrowed from the state is how the BOP will... So he remains technically in primary state custody, even though he's in marshal custody. And because he's still with the state, if the state credits that time to a state sentence, BOP will not credit it under 3585 because that time is credited to another state. But clearly the sentencing judge, both in his oral pronouncement and in the written judgment said, you will get credit. And he didn't. So what do we do? What do we do? Are you not opposing their suggestion under Jones that we send it back to get these mathematical calculations figured out? Because Judge Lamel, in writing and orally said, it's going to be concurrent. And he looks at the guy and says, you're young, you've accepted responsibility. On the other hand, you've got a pattern. So he goes high end at 71, thinking there's going to be something concurrent, but he doesn't get it. I don't doubt the judge wanted it to be concurrent. Whether that one sentence in there meant he meant to reduce the time by however many times, as I think Judge Wilson, you may have showed, it's kind of, or Judge Iggins and you said the statement's ambiguous itself. That kind of runs to an issue of, is it clear and obvious error? The bottom line is we don't really know what was in the judge's head. And it's hard to see that. Okay. So, I mean, just practically speaking, if you're agreeing to a Diggles error on two points, where vacating, remanding, if it's going to be a resentencing, why not figure out what was in his head? Practically it doesn't bother me. I would ask one thing, though. I would encourage the court something. And you can ask Ms. Coon about this, too. She may agree. A lot of confusion happens when a district court says end credit for time served. And I don't, you know, I'm not sure how often the court sees it or even FPD, because in my experience, we tend to see this 15 years down the line when someone is transferred from state to federal, and now they're realizing they're not getting the time they thought they would get. It comes up in nunc pro tonc. It comes up in 2255s or 2241s or other motions. That's not the time to handle all this, right? It doesn't help to handle it there. It doesn't help to handle it in 2255s. It's not even good to handle in direct appeal. It's something that needs to be handled at the district court. And there's a lot of confusion. When a judge says end credit for time served, I don't think there's a meeting of the minds. So if the court, whatever it does, whether it affirms, reverses, I would encourage the court to write on what is, what the process is, what credit for time served means and what it doesn't mean, to maybe give a little better, maybe that's indirect, but a little more proactive guidance to not only the parties, the court, but also CJA attorneys who may not be as familiar sometimes with the federal practice and how 3585. So practically, we don't mind, but if the court would do that, it would be great. In the last couple of minutes I have, Judge, you know, we'll just go back. Looking at, again, looking at it, I understand what Garner says. Forbido and portery do what it does. The point we're asking is just look at every statute. We do not believe that Garner intended to wipe out every general intent crime because it's general intent, which would include, as you pointed out, Judge Hickinson, as we pointed out here, rape, which no matter whether it's a general intent crime, I have a problem with any hypothet that could possibly show the reckless or negligent raping of someone. But that's what we would be doing if we say Garner just knocks out all general intent crime. I doubt that's what Garner meant. I doubt what it's intended. And the actions here in this statute require a defendant to take and act against someone and create at least an atmosphere of intimidation or use force or intimidation to take something from someone's control. That equates to at least knowledge, if not purposeful conduct, that would be appropriate under Borden. And unless the court has any other questions, we would ask that except for the sentencing issues we discuss, the court would affirm at least the guideline calculations in this  Thank you, Counsel. Thank you, Governor. Just briefly, I wanted to address one of the last points that the government made about the rape statute. I just wanted to reiterate, the rape statute that is cited in the case that the government mentions in its briefing is a statutory rape statute. It's not a question of whether it can be committed recklessly, negligently, that kind of thing. There is no force element in that. And so that's why I think that that's a little bit misplaced to be suggesting that that is somehow relevant to this analysis. That kind of brings me into a second point I want to make. And this goes to much of the case law that the government focuses on in its brief. It talks about this line of cases, starting with Johnson, Stokeling, about the amount of force. Put all the pre-Borden cases aside. Okay. This is right. This is about men's rape. It's not about the amount of force that's inherent in the force clause. And then to go to a point about the robbery and talking about armed robbery, we're not focused on, you know, the intent with the gun necessarily. I agree that the question is about the force or intimidation element. But if you look at the cases that we've talked about, especially Johnson in particular, I think the government was making a point that there's demands in these cases. Well, Johnson, that's the robbery from the person who is making change at a bank teller. There actually was no demand, and that was one of his points that he made to the court. He said, I didn't make a demand. I didn't threaten anybody. He just grabbed money out of the person's hand as she was receiving it from the teller and ran out the room. And that was the undisputed facts in that case. And so I think to Judge Ho's point, I think you were kind of discussing this a little bit. The idea behind these cases with recklessness is that it's enough for somebody to create this atmosphere of fear or intimidation, or to have done something that has made the victim feel intimidated. And that's the language we see in these three cases, Smith, Robinson, and Johnson, is that the courts are saying that the person was reasonable in feeling intimidating. It was an intimidating environment. It has nothing to do with what the person actually intended. Although, again, I know it's a little bit conceptual, but that robbery, they're grabbing it purposefully out of her hand. And then in the Smith case, it's a purse being snatched off the push cart, right, purposefully? Correct. Off of the push cart, not even in her possession, just in her presence. Actually, neither case showed recklessness. Both were deliberate and purposive. Recklessness with respect to force or intimidation is the question. Intentional taking, sure. Intimidation is a possibility. OK. Sure. And so I think, you know, even under the Portery framework, we win. If you look at the cases in Portery that were rejected under Plain Air Review, those are cases that involved battery or an aggravated battery, and it's cases where the court said in each situation, it was, for example, putting a razor in your hand and high-fiving someone, you obviously at least knew that you were going to cause harm. Whereas in these robbery cases, there is no requirement or expectation that somebody even know that their actions are going to cause someone to feel fear or intimidation. It's enough that they're just snatching something in a face-to-face or in their presence confrontation. That's what the cases basically indicate, elevates it from theft to robbery. It's just the mere fact that the victim is actually present when it's happening and that they can feel intimidated. And then just briefly, unless the court has further questions on the robbery issue, for the jail credit issue, it's 13 and a half months of time that's lost for Mr. King that he was awaiting sentencing. As the government indicated, he was effectively borrowed from state custody. But there's 13 and a half months that he's not getting credit for that I believe that the language from the judge is clear that he intended him to get. He said, credit for the time you've served awaiting this sentencing. And so it very much matters for him. It may, you know, for a remand-free sentencing- What's the date right now? Oh, I can't recall off the top of my head. When was the sentencing? I'm sorry? When was the sentencing? 2024, late 2024, I believe. I can't recall his release date specifically, but in the supplemental document, it provides the calculation and shows he's getting zero days. And just to address one final point, I know that the government mentioned that the court said with respect to concurrent consecutive that he wasn't going to make a decision on that. But at the end of the sentencing, he did in fact, after there was discussion and some confusion, he did in fact say that he was recommending concurrent sentences. So that was properly reflected in the written judgment, that he ordered concurrent. It just doesn't solve the problem of prior jail credit time. Okay. No further questions? Thank you, Your Honors. Thank you both. The case is submitted. That concludes the sitting.